**Captain Dale E. NOYD, FR23084, Plaintiff,**

v.

**Honorable Robert S. McNAMARA, Secretary of Defense, Honorable Harold W. Brown, Secretary of the Air Force, General John P. McConnell, Chief of Staff, United States Air Force, Lieutenant General Thomas S. Moorman, Superintendant, United States Air Force Academy, Major General G. B. Greene, Jr., Assistant Deputy Chief of Staff/Personnel for Military Personnel, United States Air Force, Lieutenant General Lewis B. Hershey, National Director, Selective Service System, Colonel John E. Horne, Deputy Chief of Staff, Personnel, United States Air Force Academy, Colonel Henry E. Wojdyla, Head, Department of Psychology and Leadership, United States Air Force Academy, Brigadier General Robert McDermott, Dean of Faculty, United States Air Force Academy, Defendants.**

**Civ. A. No. 67–C–143.**

United States District Court
D. Colorado.
April 25, 1967.

Marvin M. Karpatkin, New York City, William F. Reynard, Denver, Colo., for plaintiff, Ernest Angell, John de J. Pemberton, Jr., Melvin L. Wulf, Eleanor H. Norton and Rhoda H. Karpatkin, New York City, of counsel.

Lawrence M. Henry, U. S. Atty., for Dist. of Colorado, Denver, Colo., Barefoot Sanders, Asst. Atty. Gen., Harland F. Leathers, Frederick W. Drogula and C. Westbrook Murphy, Attys., Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, District Judge.

Plaintiff, a regular commissioned officer in the United States Air Force, seeks declaratory relief, an injunction and writs of habeas corpus and mandamus. The demands for relief stem from the refusal of the defendants to recognize plaintiff's asserted status as a conscientious objector and to assign him accordingly or, in the alternative, to accept his resignation from the Air Force.

Plaintiff Noyd is an Air Force captain and has been a regular commissioned officer for over eleven years. He received his commission in 1955 following graduation with distinction from Washington State University as a member of the Air Force Reserve Officers' Training Corps. Upon entry on active duty he applied for and received eighteen months of flying training. From May, 1957 to May, 1960, he was assigned to a combat unit in England as a tactical fighter pilot. In 1958, plaintiff applied under the Air Force education program to enter graduate school in the field of psychology. His application was approved and he attended the University of Michigan for three years from June, 1960 to June, 1963, receiving a master's degree and completing one year of work toward the doctoral degree. During this period plaintiff was regularly promoted and received full pay and allowances. He in addition had his tuition and other college expenses paid. As a result of this educational program, plaintiff incurred a continuing service obligation of six years. This obligation expires in June of 1969.

During the summer of 1963, plaintiff was transferred to the United States Air Force Academy where he was assigned as an Assistant Professor in Psychology. It appears that on December 8, 1966, while thus assigned, plaintiff submitted a letter of resignation to the Academy Superintendent under the provisions of

paragraph 16m, Air Force Regulation 36–12,[1] for the "best interest" of the service. In this letter plaintiff stated that he was "opposed to the war that this country is waging in Vietnam * * *" The reasons given were essentially political in nature; however, the plaintiff did make reference to his belief in "ethical humanism."[2] In the same letter, plaintiff also stated that he was "not a pacifist," acknowledging a belief in the necessity to employ force to deter or repel "totalitarian aggression."

Plaintiff's letter was submitted through channels to the Secretary of the Air Force, who denied the request on December 29, 1966. Meanwhile, on December 16, 1966, plaintiff addressed a second letter requesting that any reassignment be to duties providing minimum conflict with his professed beliefs. He had by this time learned that he was to be transferred to Cannon Air Force Base, New Mexico, purportedly for assignment to the Twenty-seventh Tactical Fighter Wing. The allegation is that this is a training base, or jumping-off base for Vietnam, where plaintiff would either be prepared for personal assignment to the combat zone, or would train others for such duty.

On December 28, 1966, plaintiff submitted a third letter alternatively requesting separation as a conscientious objector under the provisions of Air Force Regulation 35–24. This regulation provides for the recognition of a bona fide claim of conscientious objection by a member of the Air Force "to the extent practicable and equitable."[3] This letter

---

1. Air Force Regulation 36–12, "Administrative Separation of Commissioned Officers and Warrant Officers of the Air Force," dated August 1, 1963, provides as follows under paragraph 16, *Resignation Resulting in Honorable Discharge:*
"*M. Other Miscellaneous Reasons.* Within the time limitations specified in paragraph 14 above, officers who are not eligible to tender their resignations under any criteria contained in a through 1 above, may tender their resignations under this paragraph, if they can establish that their separation from the service will be in the best interest of the Air Force. Each resignation tendered under this paragraph will be considered on the individual merits of the case and normally will not be approved unless it is established that separation of the officer will be in the best interest of the Air Force. (SDN 610)"

2. "It would appear that I am no longer a loyal Air Force officer if this loyalty requires unquestioning obedience to the policies of this nation in Vietnam. I cannot honestly wear the uniform of this country and support unjust and puerile military involvement. Although it may be inconsistent, I have been able to justify (or rationalize) my position here at the Academy by my belief that my contribution in the classroom has had more effect in encouraging rationalism, a sense of humanism, and the development of social consciousness than it has had in the inculcation of militarism. My system of ethics is humanistic—simply a respect and love for man and confidence in his capability to improve his condition. This is my ultimate loyalty. And, as a man trying to be free, my first obligation is to my own integrity and conscience, and this is of course not mitigated by my government's permission or command to engage in immoral acts. I am many things before I am a citizen of this country or an Air Force officer; and included among these things is simply that I am a man with a set of human values which I will not abrogate. I must stand on what I am and what I believe. The war in Vietnam is unjust and immoral, and if ordered to do so, I shall refuse to fight in that war. I should prefer, and request, that this resignation be accepted."

3. The stated purpose of Air Force Regulation 35–24, dated March 8, 1963, is to establish "uniform procedures for the utilization, assignment, and consideration of requests for separation of conscientious objectors." It implements Department of Defense Directive 1300.6, "Utilization of Conscientious Objectors and Procedures for Processing Requests for Discharge Based on Conscientious Objection," dated August 21, 1962. Paragraph 2 of the Regulation provides:
2. Air Force Policy:
"a. *Appointment or Enlistment of Conscientious Objectors.* The Air Force does not accept individuals (other than physicians or dentists) who claim conscientious objection to military service for appointment as officers or for enlistment in the active force or the Reserve forces. Cases may arise, however, in which indi-

was submitted as an addendum to plaintiff's original request, and it repeated the ground for separation therein set forth. It also contained an explanation of his humanist beliefs which were defined by him as "respect and love for man, faith in his inherent goodness and perfectability, and confidence in his capability to ameliorate some of the banes of the human condition." Noyd was specific in asserting

that he does not believe in the traditional Christian concept of a personal or anthropomorphic God,[4] and does not claim membership in a particular religious organization.[5] He reiterated that he is not a "total pacifist."[6] Accompanying the letter was a statement from plaintiff's Base chaplain testifying to his sincerity and recommending that he be utilized in areas other than Vietnam.

vidual members profess a conscientious objection after entering military service.

"b. *Recognition of Conscientious Objection.* The fact of conscientious objection does not exempt men from the draft. However, the Congress has deemed it more essential to respect an individual's religious beliefs than to force him to serve in the Armed Forces. Accordingly, bona fide religious objection to participation in war, in any form, has been recognized to the extent that such an objector is not inducted into the Armed Forces but is required to serve his country for the same period of time in civilian work contributing to the maintenance of national health, safety, or interest. Consistent with this national policy, bona fide conscientious objection by a member of the Air Force will be recognized to the extent practicable and equitable.

"c. *Claim to Exception From Military Service.* Federal courts have held that a claim to exemption from military service under the Universal Military Training and Service Act must be interposed prior to notice of induction. Failure to make timely claim for exemption constitutes a waiver of the right to claim. Therefore, the Air Force cannot entertain a request for separation based solely on conscientious objection:

"(1) Which existed but was not claimed before entry on active duty or enlistment.

"(2) Which was claimed, and denied by Selective Service, before entry into military service.

"d. *Separation.* No vested right exists for any individual to be separated from military service at his own request before the expiration of his term of service, whether he is serving voluntarily or involuntarily. Administrative separation before completion of the term of service is discretionary with the Secretary of the Air Force, on the basis of judgment of the facts and circumstances in the case. The Air Force normally will separate members for whom a classification as conscientious objector is recommended (see paragraph 3b), except that a member for

whom a 1-A-O classification is recommended will not be separated until he has completed two years of active service (see paragraph 8a(2))."

4. "The 'God' in which I believe transcends the traditional Christian God and yet does not transcend human experience and faith built upon that experience; it is an ultimate concern for man, his purpose, and his possibilities. Part of the essence of that in which I believe is captured by Tillich: '"God" is the answer to the question implied in man's finitude; he is the name for that which concerns man ultimately. This does not mean that first there is a being called God and then the demand that man should be ultimately concerned about him. It means that whatever concerns a man ultimately becomes God for him' * * *"

5. Plaintiff's only professed "affiliation" is as a "spirtual ally of the American Humanist Association." This organization was incorporated as an educational membership organization in 1941 to represent the views of humanists in the United States and Canada. It is a founding member of the International Humanist Ethical Union, and publishes a bi-monthly journal entitled the "Humanist."

6. "I am not a total pacifist; I believe that the the use of force, or the threat of force, is sometimes necessary and just when used in self-defense, both for an individual and for a nation. I should support the use of force by a nation, or preferably the community of nations, in the defense of a nation whose integrity and existence is threatened by an external aggressor—and when all peaceful attempts at conflict resolution have proven futile. * * * I cannot prognosticate what future wars of this nation I could support. I know only that the war the United States is waging in Vietnam is unjust and immoral, that it does violence to my conscience and beliefs, and that it is impossible therefore for me to participate in, or contribute to, that war."

However, the chaplain stated that he could not classify plaintiff as a conscientious objector.

On January 24, 1967, the Secretary of the Air Force again refused plaintiff's tender of resignation. Subsequently, plaintiff received orders assigning him to the Twenty-seventh Tactical Fighter Wing, Cannon Air Force Base, New Mexico, for upgrading in the F–100 aircraft. This aircraft is currently being used in Vietnam, and the probability is strong than anyone receiving training at Cannon can anticipate transfer to the combat zone. At this point, plaintiff filed his complaint here on March 27, 1967, seeking the relief described above.

Plaintiff's threefold contentions may be summarized as follows: He first asserts that the denial of his application for recognition as a conscientious objector violates his rights under the Constitution and relevant statutes and regulations. *Secondly*, he attacks the constitutionality of AFR 35–24 as lacking the minimum criteria of procedural due process. His third allegation is that the Air Force failed to follow the provisions of AFR 35–24, in that the Air Force failed to give reasons for the disapproval of his application.

We heard arguments on March 29, 1967, and entered a preliminary order noting probable jurisdiction. We temporarily enjoined defendant from requiring plaintiff to perform any combat-type activity, directly or indirectly. We did not interfere with the transfer of plaintiff to Cannon Air Force Base, but limited the injunction to the type of duty to which plaintiff could be assigned. At the same time, we set the case down for a hearing on the merits on April 19, 1967.

On April 12, 1967, defendant filed alternative motions to dismiss and for summary judgment. The assertions of the motion to dismiss were that plaintiff has failed to exhaust his administrative remedies; that the Constitution vests exclusive authority to govern the duty assignments of military personnel in the President and in Congress; that this action is an unconsented suit against the United States; and that the complaint fails to state a claim upon which relief can be granted. Among other things, the defendants stress that the Government has invested over $250,000.00 in giving plaintiff the training he has received; that there now exists a shortage of trained pilots in the combat zone in Vietnam; and that plaintiff voluntarily committed himself to service to June, 1969, when he accepted his educational training at the University of Michigan. These arguments are made in conjunction with the provision of AFR 35–24, which provides for the recognition of a bona fide claim of conscientious objection by a member of the Air Force only "to the extent practicable and equitable." See note 3, supra.

We proceeded with the previously scheduled hearing on April 19, 1967, notwithstanding the jurisdictional allegations made in defendants' motion to dismiss, reserving decision on the question of jurisdiction until plaintiff's responsive brief had been received. We also allowed plaintiff to submit evidence in further explanation of his beliefs and to call distinguished theologians and philosophers who testified in some depth to the spiritual and religious relationship between ethical humanism and organized religion.

The threshold question is whether this court has jurisdiction to entertain the suit and to grant the relief requested. On its face it is a collateral attack on an administrative decision which attack is made prior to the completion of proceedings in the department. It anticipates the refusal of the Air Force to recognize plaintiff's stand and seeks to avoid court martial proceedings and the imposition of sanctions. Thus, the initial question is whether plaintiff has exhausted the remedies which exist within the military establishment whereby this court can entertain the action.

As stated above, plaintiff has twice made applications for separation or for assignment which recognizes his con-

scientious objector views, and both applications have been refused. He maintains that this sufficiently demonstrates the futility of continued efforts within the Air Force. He asserts that to refuse to grant declaratory relief would unreasonably force him to violate military orders and would place him in jeopardy—that this is contrary to the theory and purpose of declaratory proceedings. The difficulty is that the cases do not support the plaintiff in this position. We are, of course, familiar with the exhaustion principle as applied to state court proceedings. It arises in the state prisoner cases among others. It is a species of abstention designed to limit federal intervention to cases which present clear cut federal questions and to give other tribunals full opportunity to first consider the questions. It has been applied consistently to military adjudications.

One of the early Supreme Court decisions which applied this principle was Wales v. Whitney, 114 U.S. 564, 5 S.Ct. 1050, 29 L.Ed. 277 (1885). There the plaintiff sought in a habeas corpus proceeding to challenge the validity of military orders. The Supreme Court upheld the lower court's decision denying relief. It ruled that the civil court lacked jurisdiction, but that he could raise the legality of the order in the military court.

In a relatively recent decision, Gusik v. Schilder, 340 U.S. 128, 71 S.Ct. 149, 95 L.Ed. 146 (1950), the Supreme Court again adhered to this approach in a case in which there had been conviction but the petitioner had not sought a new trial. The petitioner had been convicted of murder by court-martial and had exhausted all of his then existing remedies. The petitioner had not utilized a subsequently-adopted provision which allowed the Judge Advocate to grant a new trial in any court martial case. The District Court had issued the writ. In affirming the decision of the Court of Appeals

reversing this judgment, the Supreme Court said:

"If Article 53 had been in force when the habeas corpus proceedings were instituted, the District Court would not have been justified in entertaining the petition unless the remedy afforded by the Article had first been exhausted. An analogy is a petition for habeas corpus in the federal court challenging the jurisdiction of a state court. If the state procedure provides a remedy, which though available has not been exhausted, the federal courts will not interfere. This is not only the holding of the Court in a long line of cases [citing cases]; it is the rule which Congress recently wrote into the Judicial Code. 28 U.S.C. § 2254, 28 U.S.C.A. § 2254. The policy underlying that rule is as pertinent to the collateral attack of military judgments as it is to collateral attack of judgments rendered in state courts" 340 U.S. at 131, 132, 71 S.Ct. at 151.

The Court of Appeals for the Tenth Circuit has consistently adhered to this rule. It has been so in cases in which military court martial proceedings had been instituted. Gorko v. Commanding Officer, 10 Cir. 1963, 314 F.2d 858; Spencer v. Hunter, 10 Cir. 1949, 177 F.2d 370, cert. denied 344 U.S. 869, 73 S.Ct. 112, 97 L.Ed. 673; Simmons v. Hunter, 10 Cir. 1960, 179 F.2d 664, cert. denied 339 U.S. 968, 70 S.Ct. 984, 94 L.Ed. 1376; McMahan v. Hunter, 10 Cir. 1950, 179 F.2d 661, cert. denied 339 U.S. 968, 70 S.Ct. 985, 94 L.Ed. 1376; Reck v. Hunter, 10 Cir. 1950, 179 F.2d 784; Dickens v. Hunter, 10 Cir. 1950, 179 F.2d 784; Hunter v. Beets, 10 Cir. 1950, 180 F.2d 101, cert. denied 339 U.S. 963, 70 S.Ct. 997, 94 L.Ed. 1372; McKinney v. Finletter, 10 Cir. 1953, 205 F.2d 761.

In Gorko v. Commanding Officer, supra, the United States Court of Military Appeals had reversed petitioner's murder conviction and the case had been set for a second court martial trial at the time the petitioner sought a writ of habeas corpus in said District Court. He al-

leged in the petition that he was being placed in double jeopardy as a result of the upcoming re-trial. The Court of Appeals, however, held that he had not exhausted his military remedies, saying:

> "Exhaustion of all available military remedies is required before reliance may be had on habeas corpus. The Uniform Code of Military Justice provides that no person, without his consent, may be tried a second time for the same offense. The adequacy and availability of the military remedy is not questioned. Consideration of the question by the courts is, accordingly, premature."

In the other cited cases petitions seeking habeas corpus by individuals incarcerated in federal prisons pursuant to court martial conviction were denied for failure to exhaust remedies afforded by Article 53 of the Articles of War, 10 U.S.C. § 1525, now 10 U.S.C. § 873.

There is good reason for the strict requirement of exhaustion as a prerequisite to jurisdiction. In part it is based on the separation of powers and particularly the desirability of allowing the military to govern its own affairs without interference from the courts. If courts were allowed to entertain these suits at any stage of the military proceedings, the delays incident to litigation could of themselves render military orders ineffectual. These expressions are contained in the opinion of the Supreme Court in Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842, wherein the petitioner sought to enjoin his duty assignment. The Court said:

> "We know that from top to bottom of the Army the complaint is often made, and sometimes with justification, that there is discrimination, favoritism or other objectionable handling of men. But judges are not given the task of running the Army. The responsibility for setting up channels through which such grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and

his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters. While the courts have found occasion to determine whether one has been lawfully inducted and is therefore within the jurisdiction of the Army and subject to its orders, we have found no case where this Court has assumed to revise duty orders as to one lawfully in the service.

> " * * * Discrimination is unavoidable in the Army. Some must be assigned to dangerous missions; others find soft spots. Courts are presumably under as great a duty to entertain the complaints of any of the thousands of soldiers as we are to entain those of Orloff. The effect of entertaining a proceeding for judicial discharge from the Army is shown from this case. Orloff was ordered sent to the Far East Command, where the United States is now engaged in combat. By reason of these proceedings, he has remained in the United States and successfully avoided foreign service until his period of induction is almost past. Presumably, some doctor willing to tell whether he was a member of the Communist Party has been required to go to the Far East in his place. It is not difficult to see that the exercise of such jurisdiction as is here urged would be a disruptive force as to affairs peculiarly within the jurisdiction of the military authorities." 345 U.S. at 93, 95, 73 S.Ct. at 540.

Plaintiff maintains that the exhaustion of remedies principle expressed in the cases does not apply to the conscientious objector case; that such a petitioner need only follow out the remedies provided in the procedural regulation pertaining to conscientious objectors. The courts which have considered this specific question have, however, re-

quired exhaustion in this type of case as well as the court martial case. See Brown v. McNamara, D.C.N.J., 1967, 263 F.Supp. 686; Chavez v. Fergusson, N.D. Cal.1967, 266 F.Supp. 879. See also Petition of Green, S.D.Calif., S.D.1957, 156 F.Supp. 174. We can see no difference from the standpoint of exhaustion of remedy and abstention by Federal Courts between the conscientious objector case and the others which are processed in military courts. No good reason is apparent why the military should not have primary jurisdiction to hear and determine the question in the conscientious objector case as well as in the case in which the service man faces military justice proceedings.

Plaintiff refers us to the line of cases [7] which allow inductees to challenge a wrongful induction by way of habeas corpus, contending that there is no valid distinction between the conscientious objector who unsuccessfully asserts his claim during the induction proceedings and thereafter attempts to gain release through habeas corpus and the individual who seeks release following voluntary enlistment. The latter has subjected himself to the military establishment and it is not unreasonable to require him to exhaust his remedies within that establishment before coming to court. The person who challenges the validity of his induction has never submitted himself to the military tribunals. Plaintiff has been a part of the military for many years. He has enjoyed its benefits and it is not unreasonable to require him to face its burdens.

When we first considered this case we noted probable jurisdiction on the basis of Gallagher v. Quinn, 1966, 124 U.S. App.D.C. 172, 363 F.2d 301, cert. denied

385 U.S. 881, 87 S.Ct. 167, 17 L.Ed.2d 108. We now conclude that it is not authority in the present context. In that mandamus suit which sought to compel the Court of Military Appeals to review his conviction of robbery, there was not the exhaustion problem which asserts itself here. A constitutional question [8] was there raised which could not be taken to the Supreme Court, and hence if the United States District Court for the District of Columbia had not taken jurisdiction the constitutional question could not have been considered by the courts. This possibility does not exist here. The contrast between *Gallagher* and the case at bar is thus clear.

■ We conclude that we are without jurisdiction to hear the plaintiff's claim. It is a collateral attack regardless of whether it is considered in the framework of habeas corpus, injunction, or declaratory judgment, and the result is always the same. We must restrain ourselves from interfering with the military processes. Plaintiff would have us short-circuit all of these proceedings so as to spare him from military justice. This we can not do. He has been a part of the military establishment for twelve years, and he can not now gain his freedom by a short cut court action. We do not reach the merits of plaintiff's case and hence we do not deny his sincerity or reject his particular basis for claiming that he is a conscientious objector.

It is concluded that the relief prayed for must be denied. It is

Ordered that the restraining order be dissolved and that the complaint be dismissed. Counsel for the Government will submit an appropriate order for the signature of the Court.

---

7. E. g., Gibson v. United States, 329 U.S. 338, 67 S.Ct. 301, 91 L.Ed. 331 (1946); Billings v. Truesdell, 321 U.S. 542, 64 S. Ct. 737, 88 L.Ed. 917 (1944).

8. Specifically, he asserted that the review provisions of the Uniform Code of Military Justice (10 U.S.C. § 867(b)) denied him equal protection of the laws contrary to the due process clause of the Fifth Amendment.