398 F.2d 705
 Charles A. HAMMOND, SN USNR R, 697 13 52, Appellant-Petitioner,
v.
H. F. LENFEST, USN, Commanding Officer, USS Coates; Oscar
Parker, Captain USN, Commanding Officer U.S. Naval Station,
Brooklyn, New York; R. T. Whitaker, Rear Admiral USN,
Commandant, Third Naval District, New York, New York,
Appellees-Respondents.
 No. 461, Docket 31909.
 United States Court of Appeals Second Circuit.
 Argued April 29, 1968.
Decided June 10, 1968, On Rehearing Aug. 26, 1968.
 
 Karl Fleischmann, Hartford, Conn. (Satter & Fleischmann, Hartford, Conn., on the brief), for appellant-petitioner.
 David Margolis, Asst. U.S. Atty. for District of Connecticut (Jon O. Newman, U.S. Atty., on the brief), for appellees-respondents.
 Before WATERMAN, FRIENDLY and KAUFMAN, Circuit Judges.
 IRVING R. KAUFMAN, Circuit Judge:
 
 
 1
 The issue presented by this appeal is of great importance in determining the proper relationship of the federal courts to the military establishment. We are called upon to decide whether an enlisted member of the naval reserve claiming to be a conscientious objector may petition for a writ of habeas corpus to obtain review of the decision of his military superiors denying a discharge requested pursuant to Department of Defense and Navy Regulations.
 
 I.
 
 2
 The facts are undisputed and can be stated briefly. On September 30, 1963, appellant Charles A. Hammond, then a 17-year old high school student, enlisted in the United States Naval Reserve (reserve). Since that date he has been on inactive duty and, at the time of the events here in question, was attached as an inactive reserve enlistee to the U.S.S. Coates, stationed in New Haven, Connecticut and commanded by appellee H. F. Lenfest.[1] In September of 1964, Hammond entered the University of Connecticut where he is presently enrolled as a student. Because of his exposure to new currents of thought, he became attracted to the tenets of the Society of Friends (Society) and in June 1966, became a member of the local 'Meeting' of the Society.[2] It is accepted that the Society of Friends is a religious body which adheres to a pacifistic interpretation of the scriptures. Accordingly, after joining the Society, Hammond became conscientiously opposed to war in any form and, on March 17, 1967, he submitted a request for a discharge to his commanding officer, Lenfest.
 
 
 3
 Hammond's heretofore futile efforts to secure a discharge-- described below-- can only be understood in the context of the general procedures adopted in this country for dealing with conscientious objectors. We recently have had occasion to review the history of the special treatment afforded conscientious objectors, see United States v. Gearey, 368 F.2d 144 (2d Cir. 1966). For our purposes it is sufficient to note that commencing as early as 1661-- in the Colony of Massachusetts-- and continuing to the present, statutory provisions have been in existence recognizing the special problems and status of conscientious objectors. Selective Service Monograph No. 11, Conscientious Objection Ch. III (1950). Despite the consistent national policy of exempting conscientious objectors from the full rigors of conscription, similar treatment has not been afforded those who become conscientious objectors after entering the service. Thus, both the language of the present draft law, see 50 U.S.C.App. 456(j), and judicial decisions make clear that the procedural and substantive protections of the statute apply to those facing induction and not to enlisted or inducted personnel already in the armed services. See, e.g., Brown v. McNamara, 263 F.Supp. 686, 691 (D.N.J.), aff'd 387 F.2d 150 (3d Cir. 1967), cert. denied, Brown v. Clifford, 390 U.S. 1005, 88 S.Ct. 1244, 20 L.Ed.2d 105 (1968). Indeed, until 1962, the Department of Defense had no procedures permitting the discharge of military personnel for reason of conscientious objection. See Comment, God, The Army, and Judicial Review: The In-Service Conscientious Objector, 56 Calif. L.Rev. 379, 401 n. 92 (1968) (letter of the Adjutant General of the Army). But, in 1962, pursuant to the authority of 10 U.S.C. 133 (1964), see Brown v. McNamara, supra, 263 F.Supp. at 688, the Secretary of Defense issued Department of Defense Directive (DOD) No. 1300.6 (August 21, 1962), providing that:
 
 
 4
 'No vested right exists for any individual to be discharged from military service at his own request before the expiration of his term of service, whether he is serving voluntarily or involuntarily. * * * 'The fact of conscientious objection does not exempt men from the draft; however, the Congress has deemed it more essential to respect a man's religious beliefs than to force him to serve in the Armed Forces. * * * Consistent with this national policy, bona fide conscientious objection by persons who are members of the Armed Forces will be recognized to the extent practicable and equitable. '* * * request for discharge after entering military service, based solely on conscientious objection which existed but was not claimed prior to induction or enlistment, cannot be entertained.' DOD No. 1300.6, Part III.
 
 
 5
 In accordance with this directive the Navy promulgated its own implementing regulations. Bureau of Naval Personnel (BUPERS) Instruction 1616.6 (Nov. 15, 1962).[3] It was pursuant to these regulations that Hammond sought his discharge.
 
 
 6
 It is conceded that Hammond carefully and faithfully complied with the requirements of BUPERS 1616.6. His written discharge request contained a six-page appendix supplying necessary information: for example, his personal history, religious and other organization affiliations, the development of his conscientious objection beliefs and the manner in which his way of life established the depths of his convictions. In addition, Hammond submitted statements from various people, including the Clerk of his Meeting, attesting to his character and the sincerity and strength of his beliefs. In accordance with the regulations, commanding officer Lenfest proceeded to interview Hammond and forwarded his evaluation, together with the discharge request, to the Chief of Naval Personnel (CNP). BUPERS 1616.6(5a).[4] Lenfest, the only person who interviewed Hammond, concluded that:
 
 
 7
 'It is my firm opinion that Hammond is completely sincere in his request and in the reason supporting it. I recommend that Hammond be discharged and inducted into the Alternative Service Plan conscientious objector's work program. * * *'
 
 
 8
 Hammond thus completed the procedural steps required of him by the regulations and had only to await the Navy's disposition of his request.
 
 
 9
 DOD NO. 1300.6 III(E) provides that 'claims of conscientious objection by all persons, whether existing before or after entering military service should be judged by the same standards.' Accordingly, the CNP referred Hammond's application to the Director of the Selective Service System, General Hershey, for an 'advisory opinion' of its validity; the regulations contemplate that a negative decision by General Hershey will normally be decisive. BUPERS 1616.6(5d) and (5f). General Hershey concluded, without further explanation, that 'based on the information in this (Hammond's) file, it is my opinion that Charles A. Hammond would not be classified as a conscientious objector if he were being considered for induction (by the Selective Service System) at this time.' Lenfest was duly notified that 'in view of the foregoing (General Hershey's statement) Hammond's request for discharge by reason of conscientious objection is disapproved.' On May 21, 1967, Lenfest reminded Hammond of his continuing duty to attend drills as required by his reserve obligation. Hammond refused and was ordered to report for two years' active duty on August 31, 1967.
 
 
 10
 Instead of commencing service, however, Hammond petitioned the District Court for Connecticut for a writ of habeas corpus and one week before he was to report for active duty, Judge Zampano issued a show cause order that directed, inter alia, that Hammond 'remain in and not be removed from this district until further order of this court.'[5] Hammond's basic contention in the court below was that the rejection of his request for a discharge was contrary to the provisions of DOD NO. 1300.6 and BUPERS 1616.6 in that the denial of his conscientious objector status was without basis in fact, and that the decision was violative of the due process and equal protection clauses of the Constitution.[6] The District Court found it unnecessary to evaluate these contentions: it questioned its jurisdiction, citing Orloff v. Willoughby, 345 U.S. 83, 93-94, 73 S.Ct. 534, 97 L.Ed. 842 (1953), and Brown v. McNamara, supra,[7] and decided that Hammond had failed to exhaust his available administrative and military remedies, citing Noyd v. McNamara, 267 F.Supp. 701 (D.Colo.), aff'd, 378 F.2d 538 (10th Cir.), cert. denied, 389 U.S. 1022, 88 S.Ct. 593, 19 L.Ed.2d 667 (1967). On this appeal, the government urges an additional ground for affirmance-- that Hammond is not 'in custody' within the meaning of the federal habeas corpus statute, 28 U.S.C. 2241.
 
 II.
 
 11
 Before proceeding to our discussion of the issues, we wish to make clear that we are aware of the lessons of both history and precedent-- that 'judges are not given the task of running the Army * * *. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters.' Orloff v. Willoughby, supra, 345 U.S. at 93-94, 73 S.Ct. at 540. Judicial hesitancy when faced with matters touching on military affairs is hardly surprising in view of the doctrine of separation of powers and the responsibility for national defense which the Constitution, Art. I, 8, cl. 1 and Art. II, 2, places upon the Congress and the President. Moreover, the ever-present and urgent need for discipline in the armed services would alone explain the relative freedom of the military from judicial supervision. Nevertheless, in 1953 the Supreme Court indicated that in appropriate circumstances even a court martial proceeding-- the ultimate method of enforcing discipline-- could be reviewed in a civil court on an application for a writ of habeas corpus. Burns v. Wilson, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953). Cf. Harmon v. Brucker, 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958) (per curiam) (District Court has jurisdiction to review discharge pursuant to military loyalty-security program). And Chief Justice Warren, in his James Madison Lecture at New York University Law Center, noted that 'When the authority of the military has such a sweeping capacity for affecting the lives of our citizenry, the wisdom of treating the military establishment as an enclave beyond the reach of the civilian courts almost inevitably is drawn into question.' Warren, The Bill of Rights and the Military, 37 N.Y.U.L.Rev. 181, 188 (1962). We emphasize, however, that the discussion which follows must be read in light of the precise contentions and factual situation presented by this appeal.
 
 III.
 
 12
 With these principles in mind, we turn to the government's contention that the District Court lacked the power to issue a writ of habeas corpus because Hammond was not 'in custody' as that term is used in 28 U.S.C. 2241. While the language of the Act indicates that a writ of habeas corpus in appropriate only when a petitioner is 'in custody,'[8] the Act 'does not attempt to mark the boundaries of 'custody' nor in any way other than by use of that word attempt to limit the situations in which the writ can be used.' Jones v. Cunningham, 371 U.S. 236, 238, 83 S.Ct. 373, 375, 9 L.Ed.2d 285 (1963) (habeas corpus available to petitioner on parole). And, recent Supreme Court decisions have made clear that 'it (habeas corpus) is not now and never has been a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose-- the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty.' Id. at 243, 83 S.Ct. at 377. See also Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968) (overruling the prematurity doctrine of McNally v. Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238 (1934)); Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968) (habeas corpus available although petitioner released from prison after writ is filed).
 
 
 13
 In the instant case, the naval authorities claim jurisdiction over Hammond's person and the right to subject him to their orders and supervision. Indeed, it was necessary for the District Court to issue an order directing that Hammond not be taken out of the district during the pendency of this action. While it is true that Hammond is not presently confined, 'besides physical imprisonment, there are other restraints on a man's liberty, restraints not shared by the public generally, which have been thought sufficient in the English-speaking world to support the issuance of habeas corpus.' Jones v. Cunningham, supra, 371 U.S. at 240, 83 S.Ct. at 376. We recognize that the government's position is not lacking in support, see, e.g., In re Green, 156 F.Supp. 174 (S.D.Cal.1957), appeal dismissed as moot,264 F.2d 63 (9th Cir. 1959), but we believe the better reasoned and modern view is that a petitioner in Hammond's predicament is under sufficient restraint of his liberty to make appropriate habeas corpus jurisdiction. Any other view would make the ends to be served by the great writ wooden indeed. Moreover, in a case arising during World War II-- at a time when this country was in at least as great a danger as it is today-- we held that habeas corpus was available to a draftee who was released from active service and transferred to the reserve after being inducted. United States ex rel. Altieri v. Flint,54 F.Supp. 889 (D.Conn.1943) (Judge, later Circuit Judge, Hincks), aff'd on the opinion below, 142 F.2d 62 (2d Cir. 1944).[9] This Court accepted Judge Hincks' reasoning that petitioner, although he was in the reserve and free to roam as he wished, was nevertheless 'in custody' within the meaning of the statute: 'His order (to report to active duty) * * * is in effect a continuing and effective assertion of custody,-- a custody loose at the moment but a custody which may at any time be made as close as the military establishment by further order or regulation shall direct.' 54 F.Supp. at 892. Hammond, of course, is subject to the same restraint as was Altieri; while not on active service and in the reserve (as was Altieri), he was (like Altieri) ordered to report for active duty. See also Ex parte Fabiani, 105 F.Supp. 139 (E.D.Pa.1952) (petitioner ordered to return to United States for pre-induction procedures or face indictment is in 'constructive custody' of the government) (cited with approval in Jones v. Cunningham, supra, 371 U.S. at 240 n. 11, 83 S.Ct. at 375).
 
 
 14
 On the facts of this case, we can only echo the perplexity of Judge Hincks in Altieri when faced with the government's 'legalistic attitude,' 54 F.Supp. at 892, that the writ will not lie until Hammond is in active military service. We fail to perceive how the interests of justice would be served or the question before us would be meaningfully different had Hammond first reported for active duty and then applied for the writ. Indeed, we can only understand the government's position on the assumption-- which we reject-- that Hammond would not be 'in custody' even if he were on active military duty. Nor do we discern any distinguishing features because Hammond originally enlisted in the reserve. This factor has little meaningful relevance in considering whether a petitioner is in custody. See Jones v. Cunningham, supra, 371 U.S. at 240, 83 S.Ct. 373, 375. ('Habeas Corpus has also been consistently regarded by the lower federal courts as the appropriate procedural vehicle for questioning the legality of an induction or enlistment into the military service'; In re Phillips' Petition, 167 F.Supp. 139 (S.D.Cal.1958). See also Crane v. Hedrick, 284 F.Supp. 250 (N.D.Cal.1968). But see Saunders v. Crouchley, 274 F.Supp. 505 (D.Neb.1967). Compare Miley v. Lovett, 193 F.2d 712 (4th Cir.), cert. denied, 342 U.S. 919, 72 S.Ct. 366, 96 L.Ed. 687 (1952). The question presented on an application for a writ of habeas corpus is the present legality of the restraint of liberty to which the petitioner is subjected, not whether the restraint was appropriate or justified in the past.[10]
 
 
 15
 Nor can we accept the argument that Hammond is not 'in custody' because he is subject to no more restraint than other persons under military orders: it is the validity of that very restraint which his petition has brought into question. We would have thought that the many cases in which inductees have successfully petitioned for a writ of habeas corpus should have settled the principle that a member of the armed forces can avail himself of the writ although he is subject only to normal military restraints.[11] See, e.g., Application of Kanas, 385 F.2d 506 (2d Cir. 1967). Compare Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953) (by implication). And Wales v. Whitney, 114 U.S. 564, 5 S.Ct. 1050, 29 L.Ed. 277 (1885), does not require a contrary result. Wales, a naval officer stationed in Washington, D.C., was placed under arrest and ordered to report for a court martial and given the complete freedom of the city. Our reading of the case makes it clear that Wales does not stand for the proposition that a petitioner is not 'in custody' because he is free within the limits of a city. Such an interpretation could not be reconciled with the settled doctrine that aliens refused entry into the United States-- who are free to travel anywhere else in the world-- can challenge their exclusion on an application for a writ of habeas corpus. See, e.g., Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 213, 73 S.Ct. 625, 97 L.Ed. 956 (1953). The true rationale of Wales can be seen in the following passage:
 
 
 16
 '* * * as medical director, he (petitioner) was residing in Washington and performing there the duties of his office. It is beyond dispute that the secretary of the navy had the right to direct him to reside in the city in performance of these duties. * * * It is not easy to see how he is under any restraint of his personal liberty by the order of arrest, which he was not under before.' 114 U.S. at 569-570, 5 S.Ct. 1050, 1052, 29 L.Ed 277.
 
 
 17
 Since the only restraint to which the petitioner was subjected was concededly lawful, the Court correctly ruled that habeas corpus was inappropriate. See United States ex rel. Altieri v. Flint, supra, 54 F.Supp. at 893; Sokol, A Handbook of Federal Habeas Corpus 26-28 (1965). Hammond, of course, does not concede the validity of the restraints to which he is being subjected.
 
 IV.
 
 18
 We turn now to the government's contention that Hammond may not be permitted to petition for a writ of habeas corpus because he has failed to exhaust available remedies with the military since he has not presented his conscientious objector claim as a defense at a court martial proceeding.[12] We are told, in effect, that until Hammond violates military law and subjects himself to action by court martial, the federal courts are without power to review the validity of the already completed administrative proceedings that resulted in the denial of his discharge. See Comment, 56 Calif.L.Rev., supra, at 440. Principal reliance is placed upon the recent decision in Noyd v. McNamara, 267 F.Supp. 701 (D.Colo.), aff'd, 378 F.2d 538 (10th Cir.), cert. denied, 389 U.S. 1022, 88 S.Ct. 593, 19 L.Ed.2d 667 (1967), in which the District Court refused to examine the conscientious objector claim of an Air Force captain with 11 years' service who was not a 'total pacifist' but was merely opposed 'to the war that this country is waging in Vietnam.' 267 F.Supp. at 703-704. It is possible to read Noyd as nothing more startling than an application of the settled doctrine that the federal courts will not interfere with duty assignments of persons lawfully in the armed forces, Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953). See Crane v. Hedrick, 284 F.Supp. 250, 252 (N.D.Cal.1968). To the extent that Noyd might suggest that a court martial is a prerequisite for federal court review of the claim that the petitioner, at the time of bringing suit, is not lawfully in the armed forces, we reject its reasoning. For several sufficient reasons we hold that Hammond's claim is now ripe for adjudication.
 
 
 19
 Gusik v. Schilder, 340 U.S. 128, 71 S.Ct. 149, 95 L.Ed. 146 (1950), relied upon in Noyd, 267 F.Supp. at 706, does not require that Hammond await the outcome of a yet to be convened court martial before petitioning for a writ of habeas corpus. In Gusik, the petitioner had already been court martialed and the Court simply concluded that once that route had been traversed, it was incumbent upon him to exhaust his appeal to the Judge Advocate General. Cf. Beard v. Stahr, 370 U.S. 41, 82 S.Ct. 1105, 8 L.Ed.2d 321 (1962) (per curiam) (action to review the recommended removal of an officer from the active list deemed 'premature' because the Secretary of the Army had not exercised his discretionary authority to order the removal); Gorko v. Commanding Officer, 314 F.2d 858, 860 (10th Cir. 1963) (habeas corpus sought after reversal of court martial conviction; second court martial scheduled).
 
 
 20
 Moreover, Hammond applied for the writ only after receiving the opinion of the nation's highest Selective Service official (General Hershey) as to his proper status. There is no proceeding that he could now pursue that would culminate in a more expert or knowledgeable decision or one that would be of greater benefit or guidance to a civil court. Indeed, as we have already noted, the regulations require General Hershey's advisory opinion to insure uniformity of treatment for all conscientious objectors, whether within or without the service. Furthermore, Hammond contends-- and the government does not assure us otherwise-- that a court martial would consider itself bound by the determination of the Chief of Naval Personnel and would not entertain a challenge to the denial of Hammond's request. See Brown v. McNamara, 387 F.2d 150, 153 n. 5 (3d Cir. 1967), cert. denied, Brown v. Clifford, 390 U.S. 1005, 88 S.Ct. 1244, 20 L.Ed.2d 105 (1968) (noting, but not ruling upon, the instant contention). And, we are referred to no case that suggests that presenting a conscientious objector claim as a defense to a charge of violating military law by failing to obey orders would be anything more than a futile and ritualistic gesture. The law knows no such requirement. See Wolff v. Selective Service, 372 F.2d 817, 825 (2d Cir. 1967). Compare Roberts v. LaVallee, 389 U.S. 40, 42-43, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967) (per curiam); Marino v. Ragen, 332 U.S. 561, 564, 68 S.Ct. 240, 92 L.Ed. 170 (1947) (Justice Rutledge, concurring); United States ex rel. Floyd v. Wilkins, 367 F.2d 990, 993 (2d Cir. 1966).
 
 
 21
 Further, assuming arguendo that Hammond's predicament can be analogized to that of a state prisoner petitioning for federal relief, it is settled that the doctrine requiring the exhaustion of available state remedies is not one defining power but one which governs the proper exercise of power, compare Bowen v. Johnston, 306 U.S. 19, 27, 59 S.Ct. 442, 83 L.Ed. 455 (1939), and is rooted in considerations of comity rather than in the scope of federal habeas corpus jurisdiction, Fay v. Noia, 372 U.S. 391, 418, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). See also Urquhart v. Brown, 205 U.S. 179, 181, 27 S.Ct. 459, 51 L.Ed. 760 (1907).[13] Where the exhaustion doctrine is applied, as in the state prisoner example, the petitioner has already committed the act for which he is to be punished. The remedy that must be exhausted-- such as an application for a writ of coram nobis-- is a true 'remedy'; unlike a court martial, it affords the possibility of relief but does not subject the applicant to the risk of the imposition of additional sanctions. It is noteworthy that an inductee can challenge his classification by the Selective Service System without subjecting himself to the risk of imprisonment or other penalties. He can either refuse induction and present his allegedly improper classification as a defense in a criminal trial or he can submit to induction and petition for a writ of habeas corpus. Witmer v. United States, 348 U.S. 375, 377, 75 S.Ct. 392, 99 L.Ed. 428 (1955). In the latter event, he does not risk criminal penalties. If, on the other hand, we analogize a court martial to an administrative rather than judicial remedy, there is even less reason to require Hammond to be court martialled on the facts of this case. 'When there is nothing to be gained * * * the courts have not been reluctant to discard (the exhaustion of administrative remedies) doctrine.' Wolff v. Selective Service, supra, 372 F.2d at 825. Compare Townsend v. Zimmerman, 237 F.2d 376 (6th Cir. 1956) (Judge, now Justice, Stewart) (action to enjoin induction).
 
 
 22
 In addition, although the government maintains that Hammond should present his claim as a defense to a court martial, it fails to explain wherein lies his power to convene the court martial that is supposedly to judge him. And, as Professor Jaffe posits, where 'one must at his risk await such further enforcing procedure as the agency chooses to initiate * * * the exhaustion doctrine is inapplicable; the person has no remedy.' Jaffe, The Exhaustion of Administrative Remedies, 12 Buff.L.Rev. 327, 329 (1963). We find further support for our conclusion that Hammond's claim is now ripe for adjudication in the many cases in which federal courts have entertained habeas corpus petitions brought by inductees without requiring that they exhaust the rather incongruous 'remedy' of a court martial. See, e.g., Application of Kanas, supra. See also, Crane v. Hedrick, supra, 284 F.Supp. at 252. We perceive no meaningful distinction between review of the conscientious objector status of an inductee and military personnel whose beliefs ripen while in the service where, as here, the decision denying the latter's request for a discharge is based upon the opinion of the Director of Selective Service.[14] In both cases, the end result is that the petitioner's challenge, in reality, is to a determination of the Selective Service System, not the Military, although the military may have acted pro forma.
 
 V.
 
 23
 The government also maintains that the decision below should be affirmed because the denial of conscientious objector status pursuant to DOD NO. 1300.6 is not subject to judicial review. As we understand the government's position, it contends that no matter how arbitrary and capricious the denial, we are without power to afford a remedy because the discharge Hammond seeks is a matter of 'executive grace' rather than 'right.' But the exemption afforded conscientious objectors under the present conscription law has frequently been denominated a matter of 'legislative grace,' e.g., Fleming v. United States, 344 F.2d 912, 915 (10th Cir. 1965), and, it is settled, as we have already indicated, that a Selective Service classification can be reviewed on a petition for habeas corpus. Witmer v. United States, 348 U.S. 375, 377, 75 S.Ct. 392 (1955). We recognize, of course, that on this appeal we are dealing with Department of Defense regulations rather than a statute. We reach the same result, however, because a validly promulgated regulation binds the government as much as the individuals subject to the regulation; and, this is no less so because the governmental action is essentially discretionary in nature. See Service v. Dulles, 354 U.S. 363, 372, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957) (discharge of foreign service officer on loyalty-security grounds); Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959). Indeed, the government's position would render nugatory the protection afforded servicemen by DOD NO. 1300.6 and cannot be reconciled with the fundamental principle that ours is a government of laws, not men. Thus, we agree with the District of Columbia Circuit that 'the District Court may review actions by military authorities which violate their own established regulations.' Dunmar v. Ailes, 121 U.S.App.D.C. 45, 348 F.2d 51, 53 (1965) (review of order separating appellant from Military Academy) (citing cases).
 
 
 24
 Nor can we accept the contention that judicial review is precluded because DOD NO. 1300.6VF provides that: 'Determination by the military department, in accordance with the facts of the case and the guidelines furnished herein, shall be final with respect to the administrative separation of its members.' This statement of policy certainly does not suggest that in appropriate cricumstances a federal court cannot inquire whether the military determination is indeed 'in accordance with the facts and the guidelines.' Moreover, it would be strange doctrine to permit an executive department to oust a court of jurisdiction merely by stating in its regulations that a court cannot review agency relings. And, the Supreme Court has not accepted comparable 'finality' arguments in closely related contexts. For example, in Estep v. United States, 327 U.S. 114, 119-22, 66 S.Ct. 423, 426, 90 L.Ed. 567 (1946), the Court held that a statutory provision that 'decisions of (the) local (draft) boards shall be final' was not a bar to limited judicial review. See also Gusik v. Schilder, supra, 340 U.S. at 132, 71 S.Ct. at 152 ('final and conclusive' decision of Judge Advocate General made 'binding upon all departments, courts, agencies, and officers of the United States' does not preclude habeas corpus jurisdiction).
 
 
 25
 As we indicated in part II of this opinion, the federal courts have traditionally afforded the military the broadest possible discretion in military matters and questions which touch on the national defense. But it would be a gross fiction to assume, on the record before us, that Hammond was denied a discharge because of military necessity or the requirements of the Navy; or that, in the words of the regulation, his discharge would not be 'practicable or equitable.' On the contrary, the Navy's own records allow but one conclusion-- that 'in view of the foregoing (General Hershey's opinion) Hammond's request for a discharge by reason of conscientious objection (was) disapproved.' The Navy, by its own regulation, chose to defer to General Hershey's decision; that decision should be subject to judicial review on a petition for habeas corpus in the same manner as other status classifications of the Selective Service System. See Brown v. McNamara, 387 F.2d 150 (3d Cir. 1967), cert. denied, Brown v. Clifford,390 U.S. 1005, 88 S.Ct. 1244, 20 L.Ed.2d 105 (1968) (opinions of JJ. Van Dusen and Maris); Crane v. Hedrick, 284 F.Supp. 252 (N.D.Cal.1968) (petition for habeas corpus granted and discharge ordered); Gilliam v. Reaves, 263 F.Supp. 378, 384-385 (W.D.La.1966) (relief denied on merits). But see Chavez v. Fergusson, 266 F.Supp. 879 (N.D.Cal.1967).[15] It is no answer to suggest that Hammond's discharge might have been refused because of the exigencies of national defense or for some other reason not subject to judicial scrutiny. The fact remains that the Chief of Naval Personnel's decision was not grounded in considerations of military need and the question before us is the validity of the decision actually rendered, not of a decision that might have been on other facts. Cf. Vitarelli v. Seaton, supra, 359 U.S. at 539-540, 79 S.Ct. at 968; Roberts v. Vance, 119 U.S.App.D.C. 367, 343 F.2d 236, 239 (1964) (Secretary of Army not relieved of requirements of valid regulations by provision that 'exceptions to these regulations may be authorized on an individual basis' where the record did not suggest that any such authorization had been made).
 
 
 26
 Our previous discussion makes clear that our decision in no way interferes in legitimate military matters or improperly interjects the judiciary in questions of national defense. Nevertheless, by way of emphasis, we reiterate that we have dealt only with the precise issues presented by this appeal. Specifically, we have not held that a decision based on military exigencies refusing to discharge a serviceman lawfully in the armed forces-- the situation that would have been presented, for example, if a soldier on a battlefield during World War II had been refused a discharge because of the needs of the service-- is subject to judicial review. The federal courts have neither appropriate judicial standards nor the capacity for dealing with such questions. Compare the Administrative Procedure Act, 5 U.S.C. 551(1)(F) and (G) (act does not apply to 'courts martial and military commissions (or) military authority exercised in the field in time of war or in occupied territory').
 
 VI.
 
 27
 In sum, we are of the opinion that this case was ripe for adjudication and that the District Court should have ruled on the merits of the petition. Hammond concedes, as he must, that the applicable scope of review is the severely limited 'no basis in fact' standard used on judicial review of Selective Service classifications. See United States v. Seeger, 380 U.S. 163, 185, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), quoting Estep v. United States, 327 U.S. 114, 122-23, 66 S.Ct. 423, 90 L.Ed. 567 (1946).[16] Thus, the District Court should determine whether there is any basis in fact for the conclusion that, at the time of filing his request for a discharge, Hammond would not have been classified as a conscientious objector were he being considered for induction by the Selective Service System. A negative answer would obviate the need for further consideration of the remaining issues presented by hommond's application. We note that the record before us does not contain a scintilla of evidence challenging the sincerity or depth of Hammond's conscientious objector beliefs or that these beliefs ripened after he entered the service. We therefore direct that the writ of habeas corpus be issued and Hammond ordered released from the Navy unless some evidence is introduced during the District Court hearing to provide a basis in fact for the denial of his request for a discharge.
 
 
 28
 Reversed and remanded for further proceedings consistent with this opinion.
 
 On Petition for Rehearing
 PER CURIAM:
 
 29
 On this petition for rehearing, we have been advised that the armed services have recently adopted new regulations, not previously brought to the attention of this court, dealing with the administrative discharge of conscientious objectors from the armed services. See United States ex rel. Mankiewicz v. Ray, 399 F.2d 900 (2d Cir. 1968). In light of these new regulations, which make major improvements in the procedures to be followed by applicants for conscientious objector discharges, we believe that the interests of justice and a proper regard for the relationship of the armed services and the federal courts would best be served by sending the case back to the Department of the Navy with directions that Hammond's application be processed in accordance with the new regulations. We, therefore, remand the case to the District Court to return the matter to the Naval authorities and, in view of the disposition of Hammond's application for a discharge, for whatever further proceedings may prove necessary not inconsistent with the opinion of this court.
 
 FRIENDLY, Circuit Judge (dissenting):
 
 30
 When Charles a. Hammond enlisted in the Naval Reserve on September 30, 1963, and thereby became a member of the Armed Forces of the United States, 10 U.S.C. c. 11, he became entitled to certain privileges, notably exemption from the Selective Service Act, 50 U.S.C. App. 456(a)(2), and assumed certain liabilities. Among the latter was subjection to military discpline, including the Uniform Code of Military Justice, 10 U.S.C. 802(3). I see no justification for ruling, after he has enjoyed the privileges for four and a half years, that he is now to be relieved of the obligations. In doing so, my brothers appear to have disregarded the principle summarized by the Chief Justice not long ago. 'So far as the relationship of the military to its own personnel is concerned, the basic attitude of the Court has been that the latter's jurisdiction is most limited.' Warren, The Bill of Rights and the Military, in The Great Rights 89, 95 (1963).
 
 
 31
 The reasons assigned for relieving Hammond of his obligation to stand trial before a court martial and then pursue his appellate remedies within the military are that he cannot convene a court martial and that, if one is convened, adverse decision is a certainty. As to the first, there is little doubt that the Navy is ready to set its disciplinary machinery in motion if Hammond persists in refusing to report for active duty, once the district court lifts its stay. In any event Hammond suffers no harm until it does; the threat of a court martial is not impairing his continued adherence to his conscientious objection. There is likewise no basis for assuming that proceedings under the Code of Military Justice will be an exercise in futility. The Navy's Regulations, BUPERS 1616.6f, say only that 'Individuals for whom neither I-O nor I-A-O classification is recommended by Selective Service normally will be retained in the naval service, subject to normal duty requirements.' It would be well within the competence of a court martial to rule that, in the absence of evidence supporting General Hershey's 'advisory opinion,' it would follow the recommendation of Commanding Officer Lenfest, although, quite naturally, the Government cannot assure us what the decision will be. As the Chief Justice has also said, 'our recent experience has shown * * * that the Court of Military Appeals can be an effective guarantee of our citizens' right to due process when they are subjected to trial by court martial.' Supra at 98. It will be ample time for a civil court to act if the militiary tribunals fail to grant Hammond the relief he seeks.
 
 
 32
 My brothers seem to concede, as I think Supreme Court decisions compel, that if a court martial had been convened, habeas corpus would not lie until military remedies had been exhausted. See Gusik v. Schilder, 340 U.S. 128, 71 S.Ct. 149, 95 L.Ed. 146 (1950); Beard v. Stahr, 370 U.S. 41, 82 S.Ct. 1105, 8 L.Ed.2d 321 (1962). I fail to perceive why Hammond should stand better because he beat the Navy to the draw. As to this I would follow the reasoning of Judge Doyle, adopted by the Tenth Circuit, in Noyd v. McNamara, 267 F.Supp. 701 (D.Colo.), aff'd, 378 F.2d 538, cert. denied, 389 U.S. 1022, 88 S.Ct. 593, 19 L.Ed.2d 667 (1967). The cases allowing draftees to challenge an allegedly wrongful induction by habeas corpus are so plainly inapposite, see 267 F.Supp. at 708, as to render their discussion supererogatory.
 
 
 33
 The tension between 'proper regard for habeas corpus, 'the great writ of liberty" and 'the duty of civil courts to abstain from intervening in matters constitutionally committed to military justice' inevitably 'raises questions of great delicacy and difficulty.' Burns v. Wilson, 346 U.S. 137, 148, 73 S.Ct. 1045, 1052, 97 L.Ed. 1508 (1953) (Mr. Justice Frankfurter). I regret that my brothers' understandable resentment at what appears to be an arbitrary 'advisory opinion' by the Director of Selective Service should lead to civil interference with the military, which may be needless and surely is premature in this case and will doubtless precipitate a flood of applications for similar relief.
 
 
 34
 I would affirm.
 
 
 
 [1]
 The other named defendants are Lenfest's superiors in the naval hierarchy: Captain Oscar Parker, commanding the U.S. Naval Station, Brooklyn, New York, and Rear Admiral R. T. Whitaker, Commandant of the Third Naval District, New York, New York
 
 
 [2]
 Hammond regularly attended various Protestant churches until he joined the Society of Friends
 
 
 [3]
 The other services have promulgated similar regulations. See Army Reg. 635-20 (May 1, 1967); Air Force Reg. 35-24 (March 8, 1963)
 
 
 [4]
 The regulations also require that the applicant be interviewed by a chaplain. The endorsement forwarded by Lenfest states that 'a chaplain was not available'; the government does not contend that the absence of an interview with a chaplain was, or in the circumstances could have been, a factor in the denial of Hammond's request
 
 
 [5]
 With the consent of both parties, this provision is in effect pending disposition of this appeal
 
 
 [6]
 The equal protection clause of the Fourteenth Amendment has been incorporated in the 'due process' requirement of the Fifth Amendment. See Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954)
 
 
 [7]
 Brown was subsequently affirmed in 387 F.2d 150 (3d Cir. 1967)
 
 
 [8]
 Section 2241 provides, in part, that:
 '(c) The Writ of habeas corpus shall not extend to a prisoner unless--
 (1) He is in custody under or by color of the authority of the United States * * *
 (2) He is in custody for an act done or omitted in pursuance of an Act of Congress * * *
 (3) He is in custody in violation of the Constitution or laws or treaties of the United States * * *.'
 
 
 [9]
 Under regulations then in force, a draftee upon induction could, upon request, be released from active duty and placed in the reserve for a short period to arrange his personal, financial and business affairs. See 54 F.Supp. at 891
 
 
 [10]
 An illustration might be helpful. A person who voluntarily commits himself to the care of a hospital or other institution is obviously not 'in custody' so long as it is his desire to remain. But it cannot be doubted that if he wishes to leave and is prevented from doing so, he can petition for a writ of habeas corpus to test the validity of what has become an 'in custody' restraint on his liberty
 
 
 [11]
 It is noteworthy that in Noyd v. McNamara, supra, the court-- which can hardly be accused of excessive sympathy for the petitioner's application-- did not suggest that because Noyd was an appointed officer who had volunteered for the Reserve Officers' Training Corps, he was not 'in custody.'
 
 
 [12]
 Because of a change of Department of Justice policy, the government no longer maintains, as it did in the court below, that Hammond's failure to appeal the denial of his request before the Board for Correction of Naval Records constitutes a failure to exhaust administrative remedies
 
 
 [13]
 The doctrine requiring the exhaustion of state remedies is now codified in 28 U.S.C. 2254. It was added during the 1948 revision of the Judicial Code and, as the Reviser's Notes make clear, was declaratory of existing law
 
 
 [14]
 See part V infra
 
 
 [15]
 Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953), does not mandate a contrary result for Orloff sought a discharge merely because he had been assigned duties as a medical laboratory technician rather than as an Army doctor; he did not claim that he was immune from induction or that he was entitled to a discharge if correctly assigned
 
 
 [16]
 The 'no basis in fact' test has recently been codified in the statute 50 U.S.C.App. 460(b)(3), as amended, Pub.L.No. 90-40, 8(c) (June 30, 1967)