**Philip W. GOGUEN, Private E-2 U. S. 51728627, Petitioner,**

v.

**Honorable Clark CLIFFORD, Secretary of Defense; Honorable Stanley Resor, Secretary of the Army; Major General Kenneth W. Collins, Commanding General, U. S. Army Training Center, Infantry, Fort Dix, New Jersey, Respondents.**

**Civ. No. 1205-68.**

United States District Court
D. New Jersey.

Oct. 14, 1969.

As Amended Oct. 21, 1969.

Darnell & Scott, Mount Holly, N. J., by Emerson L. Darnell, Mount Holly, N. J., for petitioner.

David M. Satz, Jr., U. S. Atty., Newark, N. J., by Robert W. Page, Asst. U. S. Atty., Camden, N. J., for respondents.

## MEMORANDUM

COHEN, District Judge:

Petitioner, Philip W. Goguen, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241 *et seq.*, alleging that he is being unlawfully held in custody by the United States Army, contrary to his constitutional rights which he asserted within the administrative procedures of the Army and in exhaustion thereof. It is petitioner's contention that since his induction into the Army he became sincerely, conscientiously and morally opposed to participation in *all* war and military service by reason of religious and moral convictions;[1] that despite such conviction and in further disregard of the provisions of the Department of Defense and Army regulations providing for discharge upon the ground of a conscientious objection, developed since induction, his application was dismissed. He urges that such denial was arbitrary, without basis in fact, and was as well a violation of his constitutional rights, particularly under the First and Fifth Amendments to the United States Constitution.

Briefly, the record of this case reveals that petitioner applied for discharge as a conscientious objector, pursuant to Army Regulation 635–20[2] which is an implementation of Department of Defense Directive 1300.6 (revised May 1968). He properly fulfilled all procedural requirements including a written detailed statement of his religious beliefs and his personal conviction of their inhibition of his participation in the military service. The required interviews were conducted, among which was one of two hours with the Deputy Chaplain of the Second BCT Brigade who found him to be sincere but with a personal interpretation of the scriptures and official documents of the Roman Catholic Church, of which petitioner was a practicing member, and who concluded that he was not, as such, eligible under the

---

1. 50 U.S.C. Append. § 456(j): "Nothing contained in this title shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. As used in this subsection, the term 'religious training and belief' does not include essentially political, sociological, or philosophical views, or a merely personal moral code. * * *"

2. Army Regulation 635–20 provides a procedure wherein request for discharge from the Army may be made on grounds of conscientious objection.

Army Directive for consideration as a genuine conscientious objector. The Assistant Catholic Chaplain took a like position. After appropriate review and subsequent disapproval, the Department solicited the opinion of the Director of Selective Service, who advised that were the petitioner being considered for induction, based upon a review of his file, he would not regard or approve him as a conscientious objector. His application was finally disapproved by his commanding officer on the ground that the application did not meet the requirements of paragraph 3b(3) of AR 635–20, ante, in that petitioner's request for discharge was based essentially on a political, sociological, philosophical, or a personal moral code and not upon religious grounds.

Thereafter, the chronological sequence of events is as follows: On October 29, 1968 petitioner was subjected to a Special Court Martial upon charges of refusing an order to report for and engage in combat training. Upon conviction, he was sentenced to five months confinement at hard labor. This conviction was confirmed on review. On November 15, 1968, petitioner filed the present application for a writ of habeas corpus. Upon completion of the foregoing sentence, and since the filing of the present petition, he refused to obey a direct military order by his superior commissioned officer to wear a military uniform. For this offense he was tried by a General Court Martial at Fort Dix, New Jersey, on June 4 and 5, 1969, found guilty, and sentenced to a 12 months confinement, a bad conduct discharge, a forfeiture of all pay and allowances, and a reduction to the lowest enlisted grade. These findings and sentence were reviewed by Major General Collins, the Commanding General at Fort Dix, pending which the sentence was stayed until further review by an Army Board of Review in Washington, D. C. However, following the sentence, the United States Court of Military Appeals handed down a decision, in an unrelated matter, making it mandatory for a Military Judge to instruct the members of Courts Martial to consider the lightest possible sentence before the imposition of any sentence. This had not been done in petitioner's case. Accordingly, General Collins disapproved the twelve months confinement sentence and ordered a rehearing on sentence only. Such rehearing occurred on August 27, 1969 and, by consent of the petitioner, the Military Judge reviewed the transcript of the previous trial and entered a new sentence of six months confinement. Petitioner had already served three months of that time and the balance of his sentence will be completed by the end of November, 1969. The transcript of the rehearing sentence is once more before General Collins for approval and thereafter must be forwarded by him to the Military Court of Review in Washington, D. C. for its further review and approval. It appears unlikely that review can be effected before petitioner's discharge from his present confinement in the Post stockade, upon which he may again and again be subjected to further military discipline, because of the conscientious objection to war asserted in his petition here, the sincerity of which has been undoubted by all reviewing authorities.[3]

■ The foregoing narrative poses two issues: (1) whether there is or must be an exhaustion of administrative remedies within the Army process before resort by way of habeas corpus may be had in the civilian federal courts, and (2) whether the denial by appropriate authorities of the Armed Forces of petitioner's claimed exemption from military service, on the basis of his conscientious objection, is violative of his Constitutional rights. We rule in favor of the petitioner on both issues.

3. On February 14, 1969, the return day of the Order to Show Cause, a hearing was conducted by this Court in the presence of the petitioner, his counsel, an Assistant United States Attorney and a representative of the Judge Advocate General's Office.

On the first, or procedural issue, federal courts are not ham-strung by the "administrative remedy rule" when Constitutional claims may be reached collaterally. See: Koster v. Sharp et al., 303 F.Supp. 837 (D.C.E.D.Penna. Aug. 29, 1968); cf: Brown v. McNamara, 387 F.2d 150 (3 Cir. 1967), cert. den. sub nom., Brown v. Clifford, 390 U.S. 1005, 88 S.Ct. 1244, 20 L.Ed.2d 105 (1968). As was stated by Judge Masterson in Koster:

"*  *  * otherwise the only way someone in petitioner's position could raise his constitutional claims of wrongful detention would be by first committing a military crime by disobeying an order and facing the possibility of imprisonment, as well as having to bear the stigma and attendant prejudices that attach to one dishonorably discharged from the armed forces. It should also be noted that the petitioner has no assurance that this route, if desired, would be available to him at all since the military authorities have the sole discretion to convene a court martial."

On the second issue, we find support in Koster v. Sharp, supra, and in United States v. Sisson, 297 F.Supp. 902 (D.C.Mass.1969), appeal pending, thereby aiding our resolution on constitutional principles. Otherwise the standard of "religious" basis employed by Army Regulation (AR 635–20) for the classification of "conscientious objector" would be violative of fundamental principles of constitutional law in that it would discriminate against the non-religious, i. e. persons who hold a moral conviction not identifiable with an official tenet of an established religion.

There is no issue in this case regarding petitioner's sincerity. That his conviction "crystallized" after his induction on November 29, 1967 into the United States Army, at AFEES, Boston, Massachusetts rather than prior to induction, is of no moment. We disagree that the time when conscientious objection arises, that is either before or after induction, is sufficient to avoid the holding

in *Sisson*, supra, which involved a pre-induction conscientious objector to American military activities in Vietnam. He was not in a formal sense a religious conscientious objector, but selective in his objection to the theatre of military activities. In distinction from *Sisson*, the petitioner here has conscientious objection to all war, in any form, and is not selective as to the Vietnam combat. These problems were analyzed with great lucidity and disposed of with considerable insight in the cases of United States v. Sisson, supra, an opinion by Chief Judge Wyzanski, and Koster v. Sharp, supra, which helps point the way to the disposition of this petition presented by a sincere young man conscientiously and morally opposed to participation in all war. In addition to the reasoning in *Sisson* and *Koster*, we make the following observations:

We do not consider the holding in United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), which involved an interpretation of "religious training and belief" contained in the Universal Military and Service Act, the predecessor of the current statute, as being contrary to *Sisson* and *Koster*, or our ruling. In *Seeger*, it was held that "essentially political, sociological or economic considerations that war is wrong" are areas of judgment historically reserved for the National Government which cannot be overridden by convictions of individuals, 380 U.S. 163, 173, 85 S.Ct. 850. Compare United States v. Neamand, 302 F.Supp. 1296 (M.D.Pa.1969), with which we are unable to agree. As we view the problem in its narrowest concept, the fundamental issue involved is the constitutionality of the standard employed by the legislative classification of conscientious objectors in section 6(j) of the Military Selective Service Act of 1967 (50 U.S.C. Append. § 456(j). It is not a mere matter of "accommodation" of certain religious beliefs. It is, rather, a legislative distinction between those of religious belief and those who are not of any such persuasion, but who are sin-

cerely convinced that war is morally wrong, be they atheists or heretics. If the First, Fifth and Fourteenth Amendments to the Constitution do not protect the latter group by providing due process and equal protection of the laws, then the legislative standard ignores their right to object to the killing of their fellowman because they believe it to be wrong on the basis of abhorrence to any taking of life. The Constitution and its Amendments never provided for such discriminatory legislation by Congress. For while one is free to practice his religion under the First Amendment, he who does not is equally free in the exercise of his election not to do so, and his Constitutional rights are not diminished thereby. It was declared in Epperson v. Arkansas, 393 U.S. 97, 103–107, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968), that the First Amendment mandates governmental neutrality between religion and religion, as well as that between religion and non-religion. The Court observed at page 104, 89 S.Ct. at page 270, quoting from Watson v. Jones, 13 Wall. 679, 728, 20 L.Ed. 666 (1872), "The law knows no heresy, and is committed to the support of no dogma, the establishment of no sect." The case of United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), cited by the Government, does not reach the issue here, but concerns itself generally with the constitutionality of the Military Selective Service Act of 1967.

We hold, as did the Courts in Sisson and Koster, that the legislative and regulatory standard of "religious training and belief" is violative of the First Amendment proscription against the establishment of religion and of the Fifth and Fourteenth Amendments guaranteeing both due process of law and equal protection. And, as was stated by Judge Masterson in Koster, 303 F.Supp. 837, at page 845:

"Under the Everson test, [Everson v. Board of Education, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947),] a regulation which makes exemption from military service dependent upon the applicant's religious belief is, on its face, defective. Further, a standard which exempts a religiously motivated conscientious objector from military service and denies the same relief to a person whose beliefs are just as sincere but which are not motivated by any relationship to any religion is constitutionally defective under the Fifth Amendment's guarantee of due process of law. We concur in Judge Wyzanski's assessment that ' * * * it is difficult to imagine any ground for a statutory distinction except religious prejudice.' United States v. Sisson, supra, 297 F.Supp. at 911." [Brackets supplied.]

Compare Judge Maris' dissent in Brown v. McNamara, supra, 387 F.2d at p. 154.

The practical effect of Koster and Sisson, with which this Court is in accord, is to leave as the sole test for discharge, on the basis of conscientious objection, that of sincerity of one's conviction that war is wrong. Since the sincerity of petitioner is unquestioned, his request for a writ of habeas corpus shall be granted.