Joseph Franklin **WEBER**

v.

**Commanding Officer, Captain Charles J. INACKER, 157th Infantry Brigade, Horsham, Pennsylvania 19044**

and

**Secretary of Army**

and

**Secretary of Defense.**

Civ. A. No. 70–1545.

United States District Court,
E. D. Pennsylvania.

Sept. 18, 1970.

Richard A. Axelrod, Shuman, Denker & Land, Philadelphia, Pa., for plaintiff.

Louis C. Bechtle, U. S. Atty., Barry W. Kerchner, Asst. U. S. Atty., Philadelphia, Pa., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

JOHN W. LORD, Jr., Chief Judge.

### FINDINGS OF FACT

1. Petitioner, Joseph Weber, is a Private in the United States Army Reserves. He enlisted in the Reserves on August 26, 1968.

2. Respondents are the civilian and military officials who have custody of the person of petitioner and who exercise control over him pursuant to their authority under law.

3. On March 31, 1969, petitioner formally applied for discharge as a conscientious objector under Army Reserve Regulation 135–25.

4. Private Weber was instructed in writing to submit to the unit commander supporting documents for his claim.

5. In support of his claim petitioner submitted references from Stanley H. Shapiro, M. D., Michael P. Davis, William C. Soden, Jr., Dr. Mathew M. Shapiro and John D. Bowers.

6. The reference letter of Stanley H. Shapiro, M. D. states in part:

"While I personally disagree with most of his religious beliefs and I am not myself a conscientious objector or pacifist, I have no doubt but that he is sincere in those beliefs which have led to his filing this claim." (Serviceman's United States Army Conscientious Objector Claim File, stipulated as record for this Court in hearing before this Court (hereinafter "Hearing Record") p. 23).

7. The letter of Michael P. Davis states in part:

" * * * In my opinion, Joe's convictions are very strong. He believes in what he is doing with all his being. He is as sincere, dedicated and intelligent as any young man I've ever had the pleasure of associating with. * * * " (Hearing Record, p. 26).

8. The reference letter of William C. Soden, Jr. states in part:

" * * * If I were in Joe's position, I would be satisfied with being a member of the reserves. However, the sincerity and intensity of his beliefs, which I find unquestionable will not allow him to participate in even this role which is far from active duty. His unflinching willingness to accept the consequences of his inability to enact violence or assume a role in compliance with such violence is, I believe, a testament to his sincerity." (Hearing Record, p. 27).

9. The reference letter of Dr. Mathew M. Shapiro states in part:

"I have discussed with Joseph his beliefs that lead him to claim the status of conscientious objector. I do not myself share these beliefs. I have attacked them and listened critically to his defense of them. He sincerely believes that he does not have the right to kill another human being for any reason. * * *

* * * * * *

"If a sincere, religious belief in nonviolence, and leading a life which in action exemplifies this belief, are the requisite qualifications, then Joseph Weber qualifies for the status of

conscientious objector." (Hearing Record, p. 28).

10. The reference letter of John D. Bowers states in part:

"* * * I am able to affirm that Joe Weber, to the best of my knowledge, honestly is repelled by the philosophy of violence and the military. I believe that he is sincere in these feelings, although they were not apparent to him when he enlisted. When he says that it would be impossible for him to function in any sort of a military capacity, I trust him.

* * * * * *

"* * * We have talked at great length on this subject, and although I think his reasoning has serious flaws in it, I do not quarrel with his sincerity." (Hearing Record, p. 31).

11. On May 13, 1969, Unit Commander Charles J. Inacker counseled Private Weber and explained the provisions of Army Reserve Regulation 135–25. During the interview he questioned Private Weber to try to determine the sincerity of his stated convictions. On September 7, 1969, he filed a report with respect to petitioner's conscientious objector claim. In this report, Unit Commander Inacker recommended that Private Weber's request for discharge be disapproved, but recommended that Private Weber be assigned to a medical unit where he could perform noncombatant duties. His reason for this recommendation was that he believed that Private Weber must have understood the mission of the army at the time of his enlistment in the Reserves and should not have enlisted if he then held his present views. (Hearing Record, pp. 3, 8). However, Unit Commander Inacker stated in part in his report:

"(3) While counselling the subject EM, he informed the undersigned that he will not perform military duties, combatant or non-combatant, under any conditions. In the event that his request for discharge is disapproved, he is ready to accept whatever punishment is awarded rather than serve in the military. He is aware that this may mean an extensive jail term. PVT Weber is quite firm in his conviction." (Hearing Record, p. 8).

12. On May 20, 1969, petitioner was counseled and interviewed by the Brigade Chaplain, Major William Emery, as required by Army Reserve Regulation 135–25, paragraph 7b(1). In his report Major Emery stated in part:

"3. In my judgment, Private Weber is sincere and holds strong thoughts and feelings, amounting to firm conviction in support of his request for a discharge on the grounds of conscientious objection to military service of any sort, in any conflict, whether as a combatant or non-combatant. In his replies to questions, while he was sometimes vague and sometimes demonstrated a lack of formal or extensive training in theology or meta-physical philosophy, a generally conherent [sic] and cohesive pattern of opinion and belief as set forth in the written statements was evident. He believes it wrong for any human to engage in physical violence against any other human in any organized, pre-meditated manner.

"4. * * *

"From his reading, his studies, his discussion with friends and acquaintances, and from the general cultural milieu, Private Weber has gathered a body of belief which is definitely religious and would be identified as such by most clerics, despite the absence of formal affiliation with any religious body. No one teacher, cleric or mentor has determined in any very significant manner, the set of values and beliefs which cause Private Weber to claim conscientious objection. He is not a member or adherent of any group which attempts to encourage others in this position." (Hearing Record, p. 36).

13. Following the interview with the Chaplain, an appointment with a military psychiatrist was arranged by Unit Commander Inacker for petitioner. The re-

port states that Private Weber is fit for duty.

14. On July 1, 1969, petitioner appeared with counsel before an officer in the grade of Captain or higher who is familiar with the provisions of Army Reserve Regulation 135–25 (as required by Army Reserve Regulation 135–25). That officer was Major Arthur Patterson. A verbatim transcript of that interview is part of the present record. Major Patterson states in part therein:

"I sincerely believe, personally, that you probably have a deep feeling about your convictions, and I don't wish to try to ridicule you for your conviction. We should sit down and try to analyze them, put them in the right perspective, and this is what I am trying to do here, to sit down and listen to you and your attorney and read what you have put down on paper, and give my opinion what I think your basic convictions are.

"I certainly believe you are sincere in what you believe in, and I will certainly act accordingly when I forward the papers to the higher headquarters. * * * " (Hearing Record, p. 63.)

15. Major Patterson filed a report (undated) as a result of this interview. This report states in part:

" * * * Although this individual is sincere in his feelings I do not believe his objections fall within the purview of paragraph 3b(1), AR 135–25. I believe that his views are of a philosophical nature which are based on the Viet Nam conflict.

"In view of the above it is recommended that Pvt. Weber be classified as a conscientious objector because he is opposed to combatant training and service and be classified (1–A–O). It is further recommended that subject enlisted man be reassigned to a noncombatant unit within the Philadelphia area." (Hearing Record, p. 71).

16. On October 15, 1969, the Office of Personnel Operations, U. S. Army Reserve Components, requested by letter an opinion from the Director, National Headquarters, Selective Service System, as to whether Private Weber would qualify for a conscientious objection classification if it were not for his Army Reserve status. On November 18, 1969, Assistant to the Director replied by letter as follows:

"This is in reply to your request, reference as above, for our review of the application of Private Joseph F. Weber for discharge from the Army Reserve on the grounds of conscientious objection.

"Based on the information contained in the applicant's file, which you have furnished us, it is the opinion of this Headquarters that Private Weber would not be classified as a conscientious objector if he were being considered for classification under the Military Selective Service Act of 1967, at this time.

"Your file is returned." (Hearing Record, p. 75).

17. Without interviewing petitioner personally and solely on the basis of the documents excerpted above (which documents appear in full in the Hearing Record in this Court), of the application and letters submitted by petitioner himself and of certain other documents with no direct bearing on petitioner's conscientious objector claim (all a part of the Hearing Record in this Court), the Conscientious Objector Review Board made its decision rejecting petitioner's claim and prepared its memorandum thereof. This report states in part (the full report is a part of the Hearing Record in this Court):

"b. The Board unanimously believed that Pvt. Weber's alleged conscientious objector beliefs are not truly held; are not well grounded in religious training and belief; and any objection to war in any form he might truly hold is based solely on a personal moral code and philosophical reasons. In accordance with paragraph 5c, AR 135–25, either of the latter 2 reasons is grounds for immediate disqualification of a conscientious objector appli-

cation if those reasons constitute the sole basis for such claim. * * * " (Hearing Record, p. 5).

The Board then reviewed the documentary evidence excerpted in FINDINGS OF FACT 1–16. The Board concluded:

> "c. In summary, the Board believes that Pvt. Weber is an intelligent opportunist attempting to gain discharge from his voluntarily incurred military obligation under the guise of conscientious objection; and any objection to war in any form he might truly hold is based on grounds other than religious training and proven religious belief." (Hearing Record, p. 6).

## CONCLUSIONS OF LAW

■ 1. This Court has jurisdiction to review a denial of discharge to an enlisted member of the armed forces who seeks such discharge on the grounds of conscientious objection. Hammond v. Lenfest, 398 F.2d 705 (2nd Cir. 1968).

2. Petitioner has exhausted his administrative remedies. United States ex rel. Brooks v. Clifford, 409 F.2d 700, rehearing denied 412 F.2d 1137 (4th Cir. 1969); Hammond v. Lenfest, *supra*; Koster v. Sharp, 303 F.Supp. 837 (E.D. Pa. 1969); *see* Brown v. McNamara, 387 F.2d 150 (3rd Cir.1967), cert. denied sub nom. Brown v. Clifford, 390 U. S. 1005, 88 S.Ct. 1244, 20 L.Ed.2d 105 (1968).

■ 3. It is the function of this Court to determine whether there is a basis in fact for the determinations of the Army which resulted in the denial of petitioner's application. Bates v. Commander, 413 F.2d 475 (1st Cir.1969); Heath v. Drew, et al., 316 F.Supp. 537 (E.D.Pa.1970); Koster v. Sharp, 303 F. Supp. 837 (E.D.Pa.1969); Department of Defense Directive (hereinafter "DOD") 1300.6, IV, B, 3(b).

■ 4. An advisory opinion of officials of the National Headquarters, Selective Service System, as to whether an applicant for discharge would qualify for classification as a conscientious objector if it were not for his Army Reserve status, if unsupported by reasons set forth for that opinion, cannot serve as a basis in fact for the Army's action in denying discharge. Cooper v. Barker, 291 F.Supp. 952 (D.Md.1968); *accord,* Bates v. Commander, *supra* 413 F.2d at 478.

5. The standards applicable to conscientious objector claims of Selective Service registrants are set forth in § 6 (j) of the Universal Military Training and Service Act, as amended, 50 U.S.C. A. App. § 456(j), which provides in relevant part:

> "Nothing contained in this title shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. As used in this subsection, the term 'religious training and belief' does not include essentially political, sociological, or philosophical views, or a merely personal moral code. * * * "

The statute then provides that those whose claim of conscientious objection to combatant training is sustained may be assigned to noncombatant training or if conscientiously opposed to noncombatant training, that they may be assigned to civilian service.

■ 6. If an individual deeply and sincerely holds beliefs which are purely ethical or moral in source or content but which nevertheless impose upon him a duty of conscience to refrain from participating in any war at any time, those beliefs occupy in the life of that individual a place parallel to that filled by God in traditionally religious persons and entitle that individual to a "religious" conscientious objector exemption under § 6(j). Welsh v. United States, 398 U.S.

333, 340, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970).[1]

■ 7. What is necessary for a registrant's conscientious objection to all war to be "religious" under § 6(j) is that this opposition to war stem from the registrant's moral, ethical, or religious beliefs about what is right and wrong and that these beliefs be held with the strength of traditional religious convictions. *Id.;* United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965).

8. The two groups of registrants which *obviously fall within the exclusions* from the exemption provided by § 6(j) are those whose beliefs are not deeply held and those whose objection to war does not rest at all upon moral, ethical, or religious principle but instead rests solely on considerations of policy, pragmatism or expediency. Welsh v. United States, *supra* 398 U.S. at 343–344, 90 S.Ct. 1792.

■ 9. A claim of conscientious objection cannot be rejected because it is internally derived. United States v. Seeger, *supra.*

■ 10. Standards applicable to the determination of conscientious objection claims of Selective Service registrants also apply to the determination of in-service conscientious objection claims. DOD 1300.6, IV, B, 3(b);[2] Koster v. Sharp, *supra.*

■■ 11. Even under the "no basis in fact" test, doubt as to sincerity cannot be predicated upon mere speculation. United States v. Hesse, 417 F.2d 141 (8th Cir.1969); United States v. Martin, 416 F.2d 44 (10th Cir.1969); Bates v. Commander, *supra.* There must be something in the record which substantially blurs the picture painted by the registrant and thus casts doubt on his sincerity. Kessler v. United States, 406 F.2d 151, 156 (5th Cir.1969); Batterton v. United States, 260 F.2d 233 (8th Cir.1958); *accord,* Owens v. Commanding General, 307 F.Supp. 285 (N.D.Cal. 1969). Prior voluntary enlistment is *not inconsistent* with the sincerity of an in-service conscientious objector claim. Bates v. Commander, *supra* 413 F.2d at 478.

12. There is no basis in fact in the record for a finding that petitioner's opposition to participation in war in any form is not sincere, or not held with the strength of traditional religious convictions.[3]

---

1. The statute was amended to read as it now does subsequent to the decision in the *Seeger* case, *supra.* The version of § 6(j) under consideration in the *Seeger* and *Welsh* cases, *supra,* was by its language somewhat more restrictive with respect to the definition of the "religious training and beliefs" which is involved in qualification for conscientious objection status. The second sentence of the version of § 6(j) under consideration in those cases reads:

"Religious training and belief in this connection means an individual's belief in relation to a Supreme Being involving duties superior to those arising from any human relation, but does not include essentially political, sociological, or philosophical views or a merely personal moral code."

Qualification under the present version of § 6(j) would therefore follow *a fortiori* from qualification under the older version as interpreted in the *Seeger* and *Welsh* cases.

2. It is also worth noting that federal court selective service decisions have also been applied directly to in-service conscientious objector cases without explicit reliance on this regulation. *See, e. g.,* Bates v. Commander, *supra,* and Sertic v. Laird, 418 F.2d 915 (9th Cir. 1969).

3. It is not entirely clear that the Board's Memorandum goes as far as to make such a finding. On the one hand, the Board seems to make such a finding explicitly when it states:

"The Board unanimously believed that Pvt. Weber's alleged conscientious objector beliefs are not truly held;" (Hearing Record, p. 5).

However, later in the same sentence the Board states:

"and any objection to war he *might truly hold* is based solely on a personal moral code and philosophical reasons." (Hearing Record, p. 5, emphasis added).

13. An opinion as to the characterization of petitioner's beliefs such as that of whether those beliefs are "religious" or "not religious" is one of law, and cannot in itself provide a basis in fact for the denial of the discharge. Morin v. Grade, 301 F.Supp. 614, 619 (W.D.Wis.1969).[4]

14. There is no basis in fact in the record for a finding other than that petitioner's opposition to war stems from moral, ethical or religious beliefs about what is right and wrong. There is no basis in fact for a finding that pe-

titioner's beliefs rest solely on considerations of policy, pragmatism or expediency.[5]

15. Claims of conscientious objection growing out of experiences prior to entering military service, but which did not become fixed until after entry into the service, are entitled to consideration. DOD 1300.6, IV, B, 2.

16. There is no basis in fact for the denial of petitioner's claim for discharge as a conscientious objector under the standards of Welsh v. United States, *su-*

---

Similarly, in its conclusion the Board states:

"In summary, the Board believes that PVT Weber is an intelligent opportunist attempting to gain discharge from his voluntarily incurred military obligation under the guise of conscientious objection;" (Hearing Record, p. 6).

But in the remainder of the same sentence, the Board states:

"and any objection to war in any form *he might truly hold* is based on grounds other than religious training and proven religious belief." (Hearing Record, p. 6, emphasis added).

Perhaps the Board's conclusion, then, does not rule out sincere objections to war in any form, but indicates that beliefs petitioner truly holds are not of the proper type. It is unnecessary to determine whether the Board's finding is of this limited nature or goes as far as that set forth in Conclusion of Law 12, however, or to send the matter back to the Board for such determination. For, if the Board's finding does not go that far, then it is insufficient to permit rejection of petitioner's claim *on the ground of insincerity* (the other ground, the type of belief, is dealt with in Conclusion of Law 14). If on the other hand, the Board's conclusion does go that far, then, as indicated in Conclusion of Law 12, there is no basis in fact for it in the record. The Court finds the alleged inconsistency relied on by the Board (Hearing Record, pp. 5–6) to be without substance. *See* Kessler v. United States, *supra.*

4. This is not to say, of course, that the character of the applicant's beliefs is an improper ground for rejection of his conscientious objection claim. On the contrary, certain aspects of the character of the beliefs of the applicant set forth

in the statute and regulations and explicated in the *Seeger* and *Welsh* cases, *supra,* are critical in the evaluation of his claim. Neither Conclusion of Law 13 nor any other Conclusion of Law here passes on the validity in constitutional terms of these requirements. *See* Koster v. Sharp, *supra,* and United States v. Sisson, 297 F.Supp. 902 (D.Mass.1969); appeal dismissed, 399 U.S. 267, 90 S.Ct. 2117, 26 L.Ed.2d 608 (1970). Issues of that sort would only be reached in this case, if contrary to the conclusion of the Court, it were held that there was a basis in fact for the Board's rejection of petitioner's claim. All that is held in Conclusion of Law 13 and in the *Morin* case is that the mere fact that an interviewing officer characterizes an applicant's belief as, for example, "philosophical" rather than "religious", does not in itself constitute a "basis in fact" for a similar conclusion of the Board so as to thereby preclude the Court from further review.

5. Once again, it is not entirely clear that the Board's Memorandum goes as far as to preclude the finding referred to in the first sentence of Conclusion 14 or to reach that of the second sentence. The Supreme Court had not yet decided the *Welsh* case, *supra,* at the time the Board evaluated petitioner's claim. However, it is unnecessary to determine whether the Board's conclusion does in fact go that far. For, if the finding does not go that far, it is insufficient for the rejection of petitioner's claim on the basis of the character of his beliefs, under the standards laid down in *Welsh.* If, on the other hand, the Board's conclusion does go that far, there is no basis in fact in the record for the Board's finding.

*pra*, and United States v. Seeger, *supra*, in light of Conclusions of Law 12–15.

17. Petitioner's request for a writ of habeas corpus must be granted and petitioner should be discharged in a manner consistent with respondents' having originally made the determination that petitioner was entitled to discharge as a conscientious objector. See Heath v. Drew, *supra*.

There is probable cause for appeal.

And it is so ordered.