113 N.J. Super. 486 (1971)
274 A.2d 312
PETER STREETER, GEORGE H. PFIRRMAN AND WARREN ABRAMSON, PLAINTIFFS,
v.
WILLIAM BROGAN, INDIVIDUALLY, AND t/a CIRCLE SUNOCO SERVICE, AND SUN OIL COMPANY, A NEW JERSEY CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided February 8, 1971.
*488 Mr. Jack Wysoker for plaintiffs (Messrs. Mandel, Wysoker, Sherman, Glassner, Weingartner and Feingold, attorneys).
Mr. Eugene P. Kenny for defendant William Brogan, individually, and t/a Circle Sunoco Service.
Mr. Francis X. Journick for defendant Sun Oil Company (Messrs. Wilentz, Goldman and Spitzer, attorneys).
FURMAN, J.S.C.
The issue before the court is whether plaintiffs and other members of the class whom they represent are entitled to an injunction against defendant Brogan, who refused to sell them gasoline because they displayed the so-called peace symbol on their cars.
The facts are stipulated. The peace symbol is thus &utrif; It is in wide currency among persons opposed to the war in southeast Asia, constituting a cross-section of the public of diversified religious, nonreligious and anti-religious views.
Defendant Brogan is a disabled combat veteran of the Korean War. He has a stepson now serving in the United States Marines. After research into its origins he formed the conviction that the peace symbol is anti-Christ and atheistic, as well as the symbol of cowardice and capitulation. He posted a large sign at the gasoline service station of which he is proprietor under lease from defendant Sun Oil Company, located on U.S. Highway 1 and 9 in Woodbridge Township. The sign identified the peace symbol as the symbol of hate and anti-Christ. The township board of adjustment subsequently ordered its removal.
Plaintiffs and others, about 14 persons in all, drove several cars displaying the peace symbol into defendant Brogan's gasoline service station and demanded gasoline on September *489 3, 1970. Their purpose in displaying the peace symbol was to express their opposition to the war in southeast Asia. Defendant Brogan refused them service. When plaintiffs and those with them declined to leave the premises without being supplied with gasoline, defendant Brogan summoned the township police. The police ordered plaintiffs and the others off the premises under threat of arrest.
U.S. Highway 1 and 9 is a main highway artery traversing New Jersey. Within a half-mile radius of defendant Brogan's there are approximately 12 other gasoline service stations.
Plaintiffs found their cause of action for a permanent injunction under New Jersey and federal civil rights statutes, New Jersey and Woodbridge Township licensing requirements for gasoline service stations and the common law.
The New Jersey statute of 1945, as amended (N.J.S.A. 10:1-3), provides:
No owner, lessee, proprietor, manager, superintendent, agent or employee of any such place shall directly or indirectly refuse, withhold from, or deny to, any person any of the accommodations, advantages, facilities or privileges thereof, or directly or indirectly publish, circulate, issue, display, post, or mail any written or printed communication, notice or advertisement to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from, or denied to, any person on account of race, creed, color, national origin, ancestry, marital status or sex, or that the patronage or custom thereat of any person belonging to or purporting to be of any particular race, creed, color, national origin, ancestry, marital status or sex, is unwelcome, objectionable or not acceptable, desired or solicited.
The Federal Civil Rights Act (42 U.S.C.A. § 2000a(a)) provides:
All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.
Defendant Brogan's gasoline service station is by definition (N.J.S.A. 10:1-5; 42 U.S.C.A. § 2000a(b) (2)) a *490 place of public accommodation subject to the state act and a place of public accommodation whose operations affect commerce subject to the federal act.
Indisputably, neither civil rights act, state or federal, bars discrimination based upon political views. Thus, insofar as defendant Brogan refused service because plaintiffs were expressing opposition to the war in southeast Asia he was not in violation of the civil rights acts. Cf. Garifine v. Monmouth Park Jockey Club, 29 N.J. 47 (1959).
Plaintiffs argue that pacifism or opposition to war is a firm, consistent ethical belief, rising to the stature of a creed and within the protection of N.J.S.A. 10:1-3. This argument is blocked on the law and facts. No reported opinion has construed "creed" in N.J.S.A. 10:1-3 or "religion" in 42 U.S.C.A. § 2000a(a) as encompassing a moral or ethical creed apart from a formal religious creed. In addition, defendant Brogan refused service to plaintiffs because they displayed the peace symbol, not because of their pacifism or other fixed moral or ethical belief.
A subtler extension of plaintiffs' argument is that defendant Brogan viewed the peace symbol as anti-Christ and atheistic and thus discriminated against them on religious grounds. By analogy to the Selective Service cases, in particular United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965); United States v. Sisson, 297 F. Supp. 902 (D. Mass. 1969), app. dism. 399 U.S. 267, 90 S.Ct. 2117, 26 L.Ed.2d 608 (1970) and Goguen v. Clifford, 304 F. Supp. 958 (D.N.J. 1969), a person opposed to formal religion or an atheist is entitled to equal protection of the laws. A statute against discrimination, according to this argument, should protect an atheist as well as a member of a religious faith.
Whatever the merits of this argument in other contexts, it is inapplicable here. Plaintiffs do not allege atheism (or any religious views). Defendant Brogan refused them service because of their display of the peace symbol, as already pointed out, not because they were anti-Christ or atheistic. *491 He had a sincere belief that the peace symbol itself was anti-Christ and atheistic but no reasonable ground to suppose, in view of its wide currency among the public generally, that persons displaying the peace symbol were anti-Christ and atheistic.
This court, therefore, holds that defendant Brogan is not subject to an injunction under the state or federal civil rights acts.
Plaintiffs also cite the gasoline service station licensing requirements of the state statute. (N.J.S.A. 54:39-1 et seq.) and of the Woodbridge Township ordinance. But these legislative provisions are for the purposes, respectively, of collecting the Motor Fuels Tax and of fire protection, purposes unrelated to training or skill qualifications for gasoline service station proprietors. Such licensing, accordingly, does not foster a favored or monopoly position with a concomitant duty not to discriminate in serving the public. Cf. Sellers v. Philip's Barber Shop, 46 N.J. 340 (1966).
In any event, the Supreme Court in Garifine struck down the argument that a race track, because of its state license, had surrendered its common law right of exclusion and was obligated to admit the public without discrimination.
Plaintiffs also claim the right to service at Brogan's gasoline service station without discrimination, in accordance with the common law rights of the public to accommodations at an inn, including the feeding and stabling of their horses, and to farrier's services in attending to and shoeing horses.
Indisputably such rights exist at common law. In Garifine Justice Jacobs wrote:
Innkeepers and common carriers may be said to be the most notable illustrations of business operators who, both under early principles and under the common law today, are obliged to serve the public without discrimination. [29 N.J. at 50]
See also Greisman v. Newcomb Hospital, 40 N.J. 389 (1963), citing duty to serve all comers on reasonable terms imposed by the common law on innkeepers, carriers and *492 farriers; Lanning v. Cohen, 91 N.J. Law 409 (Sup. Ct. 1918); 2 Cooley's Blackstone, 451 n. 14 (1884); 3 Cooley's Blackstone, 164 (1872); 43 C.J.S. Innkeepers §§ 8, 9, 10; 40 Am. Jur.2d, Hotels, Motels and Restaurants, § 4 at 902; The Six Carpenters' Case, 8 Coke 146a, 77 Eng. Repr., 695 (K.B. 1610); The Origin and First Test of Public Callings, 75 U. Pa. L. Rev. 411 (1927).
According to these authorities, the rights of travelers and the duties of innkeepers were derived from considerations of public policy for the protection and security of travelers. The innkeeper who refused accommodations was subject to an action sounding in tort for damages, unless his refusal was for justifiable cause, i.e., inability to pay or disorderly conduct.
No judicial decision has been cited and none found imposing the common law obligations of the innkeeper and farrier to serve the public without discrimination upon a gasoline service station proprietor.
Defendant Brogan contends that the extension of the innkeeper's common law duties to the gasoline service station proprietor is not logically warranted. The gasoline service station proprietor does not enjoy the monopoly position which most innkeepers enjoyed at the time their duties were fixed in the middle ages. If the innkeeper cast out a wayfarer, the wayfarer might sleep overnight in a hedgerow. The motor vehicle driver who is refused gasoline at one station may drive nearby to be supplied, to any one of 12 other stations within a half mile radius of Brogan's, for example.
On the other hand, if this court sustains defendant Brogan, the proprietor of each nearby gasoline service station could refuse to supply gasoline to plaintiffs and others displaying the peace symbol on their cars.
Motor vehicles approach being a necessity today. To many people railroad or other public transportation is unavailable. Private motor vehicles provide basic transportation, including transportation to places of employment. As the motor vehicle is a necessity for a large segment of the population, *493 so too is gasoline, the fuel for its internal combustion engine. Cf. Bancredit, Inc. v. Bethea, 65 N.J. Super. 538, 549 (App. Div. 1961) (whether automobile is a necessity for an infant is a fact issue).
The inn survives as the inn or hotel or motel. Its services in feeding and stabling horses, the motor power for transportation before motor vehicles, and the services of the farrier in attending to and shoeing horses, may be viewed as assumed by the gasoline service station proprietor and garage keeper, who render equivalent fueling and maintenance services for motor vehicles. Transportation would falter and travelers be stranded in a transportation system dominated by the motor vehicle if the gasoline service station proprietor or garage keeper could pick and choose his customers arbitrarily, just as the danger was in a transportation system dependent upon horses whenever there was discrimination by an innkeeper or farrier.
This court, therefore, applies the common law obligations of the innkeeper and farrier to serve the public without discrimination to defendant Brogan as the proprietor of a gasoline service station.
The remaining issue is whether the display of the peace symbol on plaintiffs' cars led defendant Brogan to reasonably regard them as disorderly and thus to deny them service, under common law principles applicable to innkeepers. Defendant's subjective conviction that the peace symbol is anti-Christ and atheistic is pertinent on this issue.
The peace symbol is not vicious, obscene or blasphemous by any reasonable standard in view of its wide currency among a cross section of the public of religious as well as non-religious or anti-religious views. To view its display as disorderly would flout the right of freedom of speech under the First Amendment of the United States Constitution and Art. I, par. 6 of the New Jersey Constitution.
Plaintiffs and members of their class have established a right to be served at defendant Brogan's station. The refusal to serve plaintiffs was arbitrary and without justification. *494 The remedy in damages is remote. The threat of irreparable injury is immediate. A permanent injunction will be granted in favor of plaintiffs and the class whom they represent against defendant Brogan.
As to defendant Sun Oil Company there is nothing in the stipulation of facts to support a finding of a principal-agent relationship or of a conspiracy or other participation by the co-defendant in defendant Brogan's refusal to serve plaintiffs gasoline. Injunctive relief against defendant Brogan provides a complete remedy. A judgment of dismissal is granted in favor of defendant Sun Oil Company.